UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-267-FL

**United States of America**,

v.

**Mark Davis & Lawanda Ragland**,

Defendants.

**Memorandum & Recommendation**

Defendants Mark Davis and Lawanda Ragland request that the court conduct a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and, ultimately, suppress all evidence obtained during three searches, two of which were authorized by a search warrant, that occurred on April 14, 2014. The Government opposes the Defendants' request for a *Franks* hearing and the motion to suppress evidence obtained from the execution of search warrants, but stipulates to the suppression of evidence obtained through the warrantless search.

After reviewing the parties' arguments and the applicable law, the undersigned magistrate judge recommends that the Defendants' motion be granted in part and denied in part. The Defendants are not entitled to a *Franks* hearing to challenge the validity of the two warrants at issue because they have (1) failed to submit competent evidence to establish that law enforcement fabricated statements regarding the transfer of a brown paper bag from Ragland to a third party and (2) failed to establish that the inclusion of a statement regarding the odor of marijuana and the presence of drug paraphernalia at the residences in question was anything more than an inadvertent error. As a result, the Defendants are not entitled to have evidence obtained pursuant to those warrants suppressed. However, given the Government's position

regarding the warrantless search, it is recommended that the district court suppress evidence obtained from this search.

## I.    Background

On April 10, 2014, law enforcement conducted three searches in Henderson, North Carolina: a search pursuant to a warrant at 744 Parham Drive, a search pursuant to a warrant at 352 Wesley Drive, and a warrantless search of an old white house at 490 Wesley Drive. As a result of these searches, officers seized numerous firearms, ammunition, currency, marijuana, and other drug paraphernalia. D.E. 37-2 at 6. A grand jury subsequently indicted the Defendants on a number of gun and drug-related offenses.

In order to obtain the search warrants, Detective Sergeant Matthew Jackson of the Henderson Police Department submitted two affidavits to a North Carolina Magistrate. The affidavits were, in all material aspects, identical. *Compare* D.E. 37-2 at 4-5 *with* D.E. 37-3 at 4-5. Each affidavit begins with an overview of Jackson's professional credentials and then moves on to discuss the investigation into the Defendants' activities.

According to the affidavits, the investigation began when an anonymous individual called Jackson and told him that Davis and Ragland were storing and selling illegal marijuana at 352 Wesley Drive. The caller also stated that cars "would come up and down the road all times of day and night[,]" stop at the house for "a minute or two," and then leave. The caller provided several additional details, including the types of vehicles the Defendants drove, where the Defendants lived, and that gunfire was heard on coming from the residence at 352 Wesley Drive on several occasions. The affidavits go on to explain that about two months later, one or more confidential sources—it is not clear from the affidavits—indicated that "a large quantity of

marijuana was taken from the home of Mark Davis at 744 Parham Rd." and that "LaWanda Ragland would regularly transport narcotics from 744 Parham Rd. to 352 Wesley Dr."

Jackson's affidavits proceed to discuss law enforcement investigatory activity and a traffic stop that occurred on April 10, 2014. On that date, members of the Henderson Police Department "conducted surveillance at both 352 Wesley Dr. and 744 Parham Rd." Officers observed a woman driving a green vehicle leaving 744 Parham Road and traveling to 352 Wesley Drive. The vehicle matched the description provided by the anonymous caller of one of the Defendants' vehicles. At approximately the same time, a purple Nissan two-door car arrived at 352 Wesley Drive. Approximately two minutes later, the green vehicle also arrived at that location. The woman exited the green vehicle with a brown paper bag in her hand and entered the residence at 352 Wesley Drive. A man, who law enforcement later learned to be Jason Lamont Brown, got out of the passenger side of the Nissan with nothing in his hands and also went into the residence. Approximately two minutes later, Brown exited the residence with a brown paper bag in his hand and got back into the Nissan. After the Nissan left 352 Wesley Drive, law enforcement stopped the vehicle and found "over five ounces of marijuana inside a brown paper bag. The bag was located under the passenger seat." Brown and the vehicle's driver were both arrested.

Based upon this information, Jackson requested that the court issue search warrants for both 744 Parham Road and 352 Wesley Drive. Each affidavit ends with the sentence "Based upon the activity described and the smell of narcotics in the residence along with the visible drug paraphernalia present." This language occurs after the sentence requesting that the court issue a warrant. The Magistrate issued both warrants as Jackson requested.

3

Law enforcement executed both search warrants on the day they were issued and seized the items listed above.[1] During the search of 352 Wesley Drive, law enforcement observed "a beaten down path from the rear of the residence which led down to a [sic] old white house behind a pond." D.E. 40-3 at 4. Based upon information received from a neighbor, law enforcement incorrectly believed that the old white house was part of the property at 352 Wesley Drive. D.E. 40-3 at 4-5. However, in reality, the house was located on a neighboring property at 490 Wesley Drive. Gov. Mem. in Opp. at 9, D.E. 40.

After their indictment, an investigator working on behalf of the Defendants met with Brown and interviewed him regarding the events of April 10, 2014. Brown's statements are relayed to the court through an affidavit signed by the investigator. D.E. 37-3. Brown acknowledged to the investigator that he was present at 352 Wesley Drive on the date in question, that he entered the residence with Ragland, that he left the residence a short time later, and that he then got back into his car and left. However, Brown does not recall Ragland having a brown paper bag in her hands when he arrived, denies obtaining a brown paper bag from her while in the house, and claims that he did not have a brown paper bag in his hand when he left the house and returned to the car. Based upon Brown's statements, the Defendants claim that Jackson fabricated the statements in the search warrant affidavits regarding the brown paper bag.

Additionally, Defendants take issue with the language contained in both affidavits mentioning the smell of narcotics in the residences and stating that drug paraphernalia was visible to law enforcement. Defendants assert that law enforcement would have been unable to obtain this information without entering the houses, but neither a warrant nor exigent circumstances allowed them to do so. Defendants claim that this statement is both a material

---

[1] An itemized list of the specific items seized from each location can be found at D.E. 40-5.

falsehood essential to establishing probable cause and evidence that Jackson's false statements were made deliberately or with a reckless disregard for the truth. In response, Jackson submitted an affidavit stating that this language was inadvertently included because he drafted the affidavits in this case based upon "an existing warrant saved to [his] computer hard drive." D.E. 40-4.

Finally, the Defendants challenge the warrantless search of the old white house at 490 Wesley Drive on the ground that it was outside the scope of the warrant for the property at 352 Wesley Drive. The Government has stipulated to the suppression of this evidence. Gov. Mem. in Opp. at 1.

## II. Request for a *Franks* Hearing

### A. Standard to Obtain a *Franks* Hearing

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court explained the circumstances in which a defendant may challenge a facially valid warrant. Under *Franks*, a defendant is entitled to an evidentiary hearing challenging the validity of a warrant if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was include by the affiant in the warrant affidavit," and can demonstrate that "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56. Omissions of material fact "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading" can also entitle a defendant to an evidentiary hearing. *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).

However, "[t]he defendant's burden is a heavy one…." *United States v. Jeffus*, 22 F.3d 554, 558 (4th Cir. 1994). There is a "strong 'presumption of validity with respect to the affidavit supporting the search warrant'…." *Colkley*, 899 F.2d at 299 (quoting *Franks*, 438 U.S. at 171).

Thus, in order to establish that the affidavit was misleading, a defendant must specifically identify the portion of the affidavit that contains the false statement or material omission and provide the court with an offer of proof supported by "[a]ffidavits or sworn or otherwise reliable statements of witnesses…."  *See Franks*, 438 U.S. at 171.  If the defendant cannot submit supporting documentation or statements, the "absence [of these documents] should be satisfactorily explained."  *Id.*  If a defendant meets this standard, he is entitled to a hearing where the court will decide, based upon a preponderance of the evidence standard, whether the warrant should be voided and any evidence obtained pursuant to the warrant excluded.  *Colkley*, 899 F.2d at 297.

## B.     Alleged False Statements Regarding the Brown Paper Bag

Defendants contend that Jackson fabricated the statements in the arrest warrant regarding the brown paper bag.  They support this assertion with an affidavit from an investigator employed by their attorney that relays a conversation with Brown in which he denies ever seeing, obtaining, or possessing a brown paper bag at 352 Wesley Drive on the date in question. Defendants do not explain why Brown has not submitted a sworn statement of his own regarding the events of April 10, 2014.

In response, the Government notes, correctly, that the Fourth Circuit has previously held that hearsay statements in an affidavit, without an explanation for the unavailability of the declarant, are insufficient to satisfy the first element of the *Franks* standard.  In *United States v. Patterson*, the defendant's attorney submitted an affidavit to the court in support of a motion for a *Franks* hearing.  173 F. App'x. 283, 286 (4th Cir. 2006).  The affidavit relayed a conversation the attorney had with an individual identified in one of the search warrants at issue who provided statements directly contradicting information contained in the search warrant affidavit and

establishing that the officer who obtained the warrant had personal animus against the defendant. *Id.*

The Fourth Circuit determined that the defendant failed to provide "competent evidence" in support of his claim. *Id.* at 288–89. The attorney's affidavit was insufficient to meet the subjective prong of *Franks* because it did not demonstrate counsel's "personal knowledge of the events transpiring at the third search, and [was] bereft of probative evidence other than hearsay statements." *Id.* at 288. Additionally, the Court of Appeals found it significant that the defendant did not provide an explanation for the inability to supply the court with an affidavit directly from the declarant. *Id.*

The affidavit submitted in this case suffers from the same faults as the affidavit in *Patterson*. The investigator's affidavit does not indicate that he had any personal knowledge of the events of April 10, 2014, and, instead, relies on hearsay statements from Brown. Additionally, Defendants failed to explain why they could not obtain a sworn statement directly from Brown. The lack of a sworn statement from Brown is particularly disconcerting in light of the fact that officers found a brown paper bag with marijuana in it under his seat in the Nissan and that he eventually pled guilty to the marijuana possession charges arising out of his arrest on April 10, 2014. Accordingly, Defendants have not satisfied the subjective element of *Franks* and their motion for a hearing should be denied.

### C. Alleged False Statement Regarding the Odor of Marijuana in the Residence and Drug Paraphernalia in Plain View

Next, Defendants allege that Jackson's affidavits contained material falsehoods because they included the language "[b]ased upon the activity described and the smell of narcotics in the residence along with the visible drug paraphernalia present." Jackson provided an affidavit stating that this language was inadvertently included because he drafted the affidavits in this case

based upon "an existing warrant saved to [his] computer hard drive." D.E. 40-4. Jackson's statement appears credible for two reasons. First, the inadvertent inclusion of this language is plausible because it appears as a sentence fragment after a sentence that would otherwise be the conclusion of the affidavit. Second, there is no other information in the remainder of the affidavit that would indicate that law enforcement would have had the ability to determine whether there was an odor of marijuana in the house or drug paraphernalia readily visible.

Errors based upon "negligence or innocent mistake are insufficient" to establish an entitlement to a *Franks* hearing. *Franks*, 438 U.S. at 171. Additionally, in light of the court's ruling on the statements in the affidavit regarding the brown paper bag, there would be sufficient information in the affidavit to establish probable cause for a search warrant even if this statement were to be removed from the affidavits. Therefore, the undersigned recommends that Defendants' motion for a *Franks* hearing be denied.

### III. Motion to Suppress Evidence from 490 Wesley Drive

Defendants also seek an order from the court prohibiting the Government from relying on evidence seized from the old white house at 490 Wesley Drive because the house was on a separate property and beyond the scope of either search warrant. The Government has stipulated to the suppression of evidence obtained from this location. Gov. Mem. in Opp. at 1. Therefore, the undersigned recommends that the district court grant the Defendants' motion to suppress evidence obtained from 490 Wesley Drive.

### IV. Conclusion

Based upon the foregoing, the undersigned recommends that the district court deny the Defendants' motion for a *Franks* hearing, deny the Defendants' motion to suppress evidence

obtained from 744 Parham Road and 352 Wesley Drive, and grant the Defendants' motion to suppress evidence from 490 Wesley Drive.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: January 6, 2016.

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE

9