IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CR-267-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MARK ANTHONY DAVIS, and | ) | |
| LAWANDA JOYCE RAGLAND, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' joint motion to suppress evidence under the Fourth Amendment's exclusionary rule (DE 36), and defendant Ragland's motion to sever trial of defendants pursuant to Federal Rule of Criminal Procedure 14(a). (DE 51). This matter was referred to United States Magistrate Judge Robert T. Numbers, II, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b). On January 6, 2016, the magistrate judge entered memorandum and recommendation ("M&R") (DE 43), wherein it is recommended that defendants' joint motion to suppress evidence be denied in part and granted in part. Defendants timely filed objections to the M&R, and the government responded. The government also filed a response in opposition to defendant Ragland's motion to sever trial. Accordingly, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge as its own, denying in part, and granting in part, defendants' joint motion to suppress evidence; the court denies defendant Ragland's motion to sever trial.

## STATEMENT OF THE CASE

On September 15, 2015, defendants Mark Anthony Davis and Lawanda Joyce Ragland were named in an indictment charging them with possession with intent to distribute marijuana, possession of a firearm in furtherance of a drug trafficking crime, and receipt of a firearm while on pretrial release.  Warrants for defendants' arrest issued on September 15, 2015, and defendants subsequently were arrested on September 23, 2015.  On December 1, 2015, defendants filed a joint motion to suppress all evidence obtained during searches of three properties in Henderson, North Carolina, and additionally to request a hearing to examine whether the search warrants are valid under Franks v. Delaware, 438 U.S. 154 (1978).

Defendants argue that all evidence from the searches should be excluded because search warrants for two of the residences were based on allegedly false statements by Matthew Jackson, a Henderson Police Department ("Henderson P.D.") officer; those statements were necessary for finding probable cause; and search of the third residence was conducted without a search warrant. In response, the government argues that sufficient evidence exists to support finding probable cause for issuance of the two search warrants, and that it agrees not to rely on evidence seized from officers' warrantless search of the third residence.  In the M&R, the magistrate judge recommends that defendants are not entitled to a Franks hearing, that evidence from searches of the first two residences should not be suppressed, and that evidence from warrantless search of the third residence should be suppressed on the basis of the government's stipulation.

On February 4, 2016, defendant Ragland filed a motion to sever trial of defendants pursuant to Federal Rule of Criminal Procedure 14(a).  Defendant Ragland asserts that the government intends to offer into evidence incriminating statements defendant Davis provided to arresting

officers, wherein he implicates defendant Ragland, and which otherwise would be inadmissible against her in a separate trial. Defendant Ragland argues such a possibility requires severance where there is substantial risk that the jury would rely on those statements to determine her culpability, and where a joint trial may violate her rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

The government filed a response in opposition to defendant Ragland's motion on February 16, 2015, arguing that no basis exists for severance of trial where defendant Davis's statements do not implicate defendant Ragland, and in the alternative, where a limiting instruction to the jury is more appropriate than severance. In addition, if the government offers at trial defendant Davis's statements, it agrees to redact any statements referring to defendant Davis's family, including defendant Ragland.

## FACTUAL BACKGROUND

On April 10, 2014, law enforcement officers conducted three searches in Henderson, North Carolina: a search pursuant to a warrant at 744 Parham Road, a search pursuant to a warrant at 352 Wesley Drive, and a warrantless search of a house at 490 Wesley Drive. As a result of these searches, officers seized numerous firearms, ammunition, currency, marijuana, and other drug paraphernalia. A grand jury subsequently indicted defendants for possession with intent to distribute marijuana, possession of a firearm in furtherance of a drug trafficking crime, and willful receipt of a firearm while on pretrial release.[1]

---

[1] On January 19, 2012, defendants were charged with identity theft offenses, and this court released defendants on pretrial release with conditions. (United States v. Davis, No. 5:12-CR-15-FL, DE 10, 17, 18–21, 149). Conditions included, among other things, committing no new offenses, possessing no firearms, and possessing no illegal narcotics. (Id., DE 18, 20).

In order to obtain the search warrants, Jackson presented two affidavits to the magistrate judge. The affidavits are identical to one another in all material aspects. Each affidavit begins with an overview of Jackson's professional credentials, and then moves on to discuss law enforcement officers' investigation of defendants' activities.

According to the affidavits, investigation began in February 2014, when Jackson received by phone an anonymous tip that defendants were selling marijuana from a residence at 352 Wesley Drive. The caller stated that cars regularly visited the residence, stayed for a few minutes, and then departed. In addition, the caller described defendants' vehicles, the locations of 352 Wesley Drive and 744 Parham Road, and several times hearing gunfire on the 352 Wesley Drive property. The affidavits explain that approximately two months later Henderson P.D. received information that a large amount of marijuana had been moved from 744 Parham Road,[2] and that defendant Ragland regularly transported narcotics from 744 Parham Road to 352 Wesley Drive. Following these tips, Jackson began regular surveillance of both properties, confirming descriptions of defendants' vehicles, and the presence of heavy vehicular traffic to and from the properties.

On April 10, 2014, Jackson and other law enforcement officers conducted surveillance of both properties. Officers located at 744 Parham Road observed a woman, later found to be defendant Ragland, driving a green vehicle matching the anonymous caller's description leave that property. At approximately the same time, Jackson observed a purple sedan with a female driver and male passenger pull into the driveway at 352 Wesley Drive; two minutes later, the green vehicle arrived there. According to the affidavits, Jackson observed a woman leave the green vehicle carrying a brown bag and enter the house, followed by the purple sedan's male passenger, later

---

[2] Although not included in Jackson's affidavits, his report explains a confidential source of information described that a large amount of marijuana had been stolen from the 744 Parham Road property.

4

found to be Brown.  Approximately two minutes later, the man reemerged carrying a brown bag, entered the purple sedan, and departed.  Law enforcement stopped the sedan approximately ten minutes after it left 352 Wesley Drive.  Officers found more than five ounces of marijuana inside a brown bag under Brown's seat.  Both driver and Brown were arrested.

Jackson swore out search warrant affidavits for both 744 Parham Road and 352 Wesley Drive.  The affidavits explain Jackson's professional history, describe the two tips regarding activity at the residences, and recount observations by Jackson and other law enforcement officers from the surveillance on April 10, 2014.  In relevant part, the penultimate paragraph reads:

> Detective A. Morris was situated near the home of 744 Parham Rd. and I was situated near 352 Parham Rd.  Detective Morris observed a green suv with chrome wheels leaving the area of 744 Parham Rd. which is the last home on the dirt path from her surveillance point.  Detective Morris stated that a female was operating the vehicle.  At the same time I observed a purple Nissan two door passenger car pull into the driveway of 352 Wesley Dr.  After approximately two minutes later the green suv pulled into the driveway.  The female exited the suv with a brown bag in her hand and a black male exited the passenger side of the Nissan car with nothing in his hand.  After approximately two minutes the male exited the residence with a brown paper bag in his hand and the vehicle left the premises.  Sgt. J. Collier along with the Vance County Sheriffs Office Narcotics Unit conducted a vehicle stop on the Nissan passenger car which was occupied by the female driver Teresa Kelly and passenger Jason Lamont Brown.  Sgt. J. Collier smelled unburnt marijuana inside the vehicle and a probable cause search revealed over five ounces of marijuana inside a brown paper bag.  The bag was located underneath the passenger seat.  Both of these subjects were arrested.

(DE 37-2, 37-3).  The final paragraph of the affidavit concludes as follows:

> I Detective Sergeant M. [ ]Jackson, of the Henderson Police Department Vice/Narcotics Division, being duly sown, request that the court issue a warrant to search the person(s), place(s), vehicle(s), and other items described in this application.  Based on the activity described and the smell of narcotics in the residence along with the visible drug paraphernalia present.

(DE 37-2, 37-3).  The magistrate issued both warrants as Jackson requested.

5

Later in the day on April 10, 2014, directly after warrants issued, law enforcement officers executed both warrants on defendants' properties. Officers apprehended defendants and seized a number of items, including firearms, marijuana, and drug paraphernalia. During the search of 352 Wesley Drive, Jackson observed a path from the rear of that residence leading to a white house. He asked one of defendants' neighbors about the white house; the neighbor advised Jackson that the white house was part of the 352 Wesley Drive property, and that he saw defendants frequently drive back and forth from the white house to 352 Wesley Drive. In fact, the white house was located on neighboring property at 490 Wesley Drive. Based on the neighbor's advice, and not knowing that it lay on a separate property, officers searched the residence at 490 Wesley Drive.

Two months after the searches of defendants' residences and Brown's arrest, Brown pleaded guilty to misdemeanor possession of marijuana. Defendant Ragland, following her indictment, hired an investigator, Randy Miller. Miller met with Brown and interviewed him regarding the events of April 10, 2014. Brown's statements are relayed to the court through Miller's affidavit. Miller recounts that Brown told him the following during their interview: that Brown visited 352 Wesley Drive on April 10, 2014, that he did not see defendant Ragland carrying anything when he entered the residence behind her, that he stayed at the residence for a few minutes, and that he was not carrying anything when he left. In particular, Miller reports that Brown said he did not receive a brown bag from defendant Ragland at any point.

6

## COURT'S DISCUSSION

A.      Motion to Suppress Evidence

Defendants lodge three objections to the M&R's treatment of their joint motion to suppress evidence and to receive a <u>Franks</u> hearing.[3]  In particular, defendants contend: 1) that the search warrant affidavit for 744 Parham Road did not contain facts sufficient to support probable cause where Jackson corroborated only some aspects of informants' tips; 2) that inclusion of allegedly false statements in Jackson's search warrant affidavits regarding the brown bag, and sight and smell of narcotics, requires a <u>Franks</u> hearing; and 3) that the good faith exception does not apply where Jackson acted recklessly by including certain statements.  Following the standard of review, the court addresses each argument in turn.

When specifically objected to, the district court reviews <u>de novo</u> those portions of the M&R applying law to facts.  28 U.S.C. § 636(b).  Absent a specific and timely filed objection, the court reviews the M&R's application of law to fact only for "clear error," and need not give any explanation for adopting the M&R.  <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005); <u>Camby v. Davis</u>, 718 F.2d 198, 200 (4th Cir. 1983).  Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

---

[3]   Neither defendants nor the government object to the M&R's recommendation that evidence seized from 490 Wesley Drive should be suppressed where the search was conducted without a warrant.  The government has stipulated to suppression of this evidence.  Where there are no objections, and the court has reviewed the magistrate judge's findings for clear error, <u>see</u> <u>Diamond</u>, 416 F.3d at 315; <u>Camby</u>, 718 F.2d at 200, the court adopts as its own the M&R's recommendation to suppress evidence seized from 490 Wesley Drive, and defendants' motion to suppress is granted with regard to that residence.

1.    Probable Cause

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Ordinarily, a "search . . . is 'unreasonable' unless it has been authorized by a valid search warrant, and in cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." United States v. DeQuasie, 373 F.3d 509, 518 (4th Cir. 2004) (quoting Camara v. Municipal Court of San Francisco, 387 U.S. 523, 528–29 (1967)). "Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Illinois v. Gates, 462 U.S. 213, 233 (1983) (internal quotations omitted).

Defendants bear the burden of establishing a violation of Fourth Amendment rights, Rakas v. Illinois, 439 U.S. 128, 130, n. 1 (1978), and courts "accord great deference" to magistrate judges' probable cause determinations, asking only "whether there was a substantial basis for determining the existence of probable cause." United States v. Montieth, 662 F.3d 660, 664 (4th Cir. 2011) (internal quotations omitted). For example, officers' independent observation of a controlled narcotics purchase may provide sufficient probable cause for a search warrant. See United States v. Clyburn, 24 F.3d 613, 618 (4th Cir. 1994); United States v. Cubias-Rivas, No. 5:09-CR-152-FL, 2009 WL 4127555, at *4 (E.D.N.C. Nov. 25, 2009).

With regard to officers' reliance on informants for determination of probable cause in a search warrant affidavit, courts apply a "totality-of-the-circumstances analysis . . . . which permits

a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." Gates, 462 U.S. at 233. In performing this analysis, courts "recognize[ ] the value of corroboration of details of an informant's tip by independent police work." Id. at 241. In addition, where one informant's tip corroborates another informant's tip, the reliability of their information increases. See United States v. Fulgham, 143 F.3d 399, 401 (5th Cir. 2009); see also United States v. Muse, No. 98-4064, 1998 WL 726750, at *2 (4th Cir. Oct. 16, 1998) ("The information in the affidavit in this case was reliable. . . . [F]our informants told authorities about [the defendant]'s criminal activities. . . . Thus, the informants corroborated each other's stories that [the defendant] was engaging in criminal activity at his residence.").

In Draper v. United States, 358 U.S. 307 (1959), the arresting officer corroborated an informant's tip when he "saw a person, having the exact physical attributes and wearing the precise clothing described by [the informant]," and in doing so, "personally verified every facet of the information given him by [the informant] except whether petitioner had accomplished his mission and had the three ounces of heroin on his person." Id. at 308, 313. Such verification provided "reasonable grounds to believe that the remaining unverified bit of [the informant]'s information—that [the defendant] would have the heroin with him—was likewise true." Id.

Defendants argue that Jackson's search warrant affidavit for the 744 Parham Road residence failed to demonstrate probable cause. In particular, defendants argue that the officers relied upon uncorroborated statements from two informants, and that Jackson's search warrant affidavit included no information regarding the informants' reliability. One informant provided information describing: defendants' cars; defendants' frequent travel between their residences; numerous, short visits from strangers at the residences; occasional gunfire; and sale of marijuana. (DE 37-2, 37-3,

9

40-3).  A second informant provided information describing: movement of a large quantity of marijuana from 744 Parham Road, and defendant Ragland's frequent transfer of marijuana from 744 Parham Road to 352 Wesley Drive.  (DE 37-2, 37-3, 40-2, 40-3).

These tips, officers' corroboration of them, and officers' independent observations of defendants provided a substantial basis for determining the existence of probable cause.  See Montieth, 662 F.3d at 664.  The tips' common information reinforced their reliability.  See Muse, 1998 WL 726750, at *2.  Officers' corroboration of the tips further strengthened their reliability, where officers verified the informants' description of both defendants' cars, defendants' frequent travel between their residences, and short visits from strangers at the residences.  (DE 40-3); see Gates, 462 U.S. at 241.  In addition to corroborating these details, officers also observed what they believed to be an actual narcotics purchase where defendant Ragland exchanged a brown bag with Brown.  (DE 40-2, 40-3).  Considering the totality of these circumstances, officers established sufficient evidence that probable cause existed.  See Gates at 233.

Defendants' argument that the search warrant affidavits failed to provide information about the informants' reliability, and defendants' construal of United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996), both fail.  An informant's reliability is one consideration among others in determining the value of his report, but it is not an "entirely separate and independent requirement[ ] to be rigidly exacted in every case."  Gates, 462 U.S. at 230.  The court in Wilhelm did not say otherwise.  See 80 F.3d at 119 ("The [United States Supreme] Court then adopted a 'totality-of-the-circumstances' test to determine whether probable cause supported a search warrant.") (citing Gates, 462 U.S. at 238).

10

In <u>Wilhelm</u>, law enforcement officers failed to establish probable cause for a search warrant affidavit based upon an informant's tip. <u>Id.</u> at 120–21. "[T]he only corroboration [the arresting officer] provided was that the informant's directions to [the defendant]'s home were correct." <u>Id.</u> at 121. By contrast, here, officers received multiple tips, corroborated significantly more details of the tips, and independently observed additional bases supporting existence of probable cause. The court's finding of probable cause further is buttressed by officers' observation of an actual narcotics sale, which the court deems credible for reasons that follow. Accordingly, the warrants for 744 Parham Road and 352 Wesley Drive did not lack probable cause.

    2.    <u>Franks</u> Hearing

In <u>Franks</u>, the United States Supreme Court delineated circumstances in which defendants may challenge a facially valid search warrant. 438 U.S. 154. First, defendants must "[make] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." <u>Id.</u> at 154. Second, defendants must demonstrate that "the allegedly false statement is necessary to the finding of probable cause." <u>Id.</u> at 154. Defendants bear the burden of proof, as there is "a presumption of validity with respect to the affidavit supporting the search warrant." <u>Id.</u> at 171.

Defendants' showing "'must be more than conclusory' and should include affidavits or other evidence." <u>United States v. Clenny</u>, 631 F.3d 658, 663 (4th Cir. 2011) (internal quotations omitted). If defendants are unable to provide supporting documents or statements, their "absence should be satisfactorily explained." <u>Id.</u> "Allegations of negligence or innocent mistake are insufficient. The burden of making the necessary showing is thus a heavy one to bear." <u>United States v. Tate</u>, 524 F.3d 449, 454 (4th Cir. 2008). Where defendants make the necessary showing, they are entitled to

a Franks hearing upon whether warrants should be voided and any evidence obtained pursuant to the warrants suppressed. Clenny, 631 F.3d at 663.

In United States v. Patterson, 173 F. App'x 283 (4th Cir. 2006), a defendant argued for a Franks hearing on the basis that an arresting officer recklessly included false information in a search warrant affidavit. Id. at 288. In support, the defendant supplied an affidavit by his counsel describing an interview with a third party, where the defendant's counsel relayed statements from the third party contradicting those of the officer. Id. at 287–88. The court found this evidence insufficient to meet the standard for a Franks hearing, reasoning that "counsel's affidavit was without personal knowledge of the events transpiring at the [ ] search and bereft of probative evidence other than hearsay statements. Significantly, [the defendant] never gave any explanation . . . as to why he could not obtain an affidavit from [the third party] on his motion for a Franks hearing." Id. at 288.

In United States v. Tate, 524 F.3d 449 (4th Cir. 2008), a defendant supported his motion for a Franks hearing, in part, on an affidavit by his investigator that a fence surrounding the defendant's residence made the property inaccessible without impermissible intrusion. Id. at 452–53. The investigator's statements directly contradicted statements in the arresting officer's search warrant affidavit, particularly where the officer stated that the relevant evidence easily was accessible, and that it was located in a trash can outside the curtilage of the defendant's property. Id. The affidavit in Tate differs from the one in Patterson in that the investigator in Tate personally observed facts to which he testified, whereas defense counsel in Patterson testified only to hearsay statements received from a third party.

12

Defendants identify two statements in Jackson's search warrant affidavit, each of which they contend Jackson included with reckless disregard for the truth and was necessary for finding probable cause, and which therefore require a Franks hearing. The court will address each in turn.

a.      Jackson's Statements Regarding Exchange of the Brown Bag

First, defendants point to Jackson's statements regarding exchange of the brown bag, particularly that he "observed a purple . . . car pull into the driveway of 352 Wesley Dr. . . . [Defendant Ragland] exited [her car] with a brown bag in her hand. . . . After approximately two minutes [Brown] exited the residence with a brown paper bag in his hand." (DE 37-2).

With regard to this first statement, defendants argue that Jackson's observations regarding the brown bag are not credible. Defendants offer proof through an affidavit recounting Miller's interview with Brown, in which Brown denies to Miller receiving a brown bag from defendant Ragland. Defendants explain they were unable to obtain a sworn statement from Brown himself because, while they attempted to contact him through his father and girlfriend, they were unable to locate him. In addition, Miller and counsel for defendant Ragland visited Henderson P.D. headquarters on July 28, 2015, and requested to view all evidence seized from the purple sedan during Brown's arrest. The brown bag was not produced that day; therefore, defendants argue, officers either mishandled the bag or else fabricated its existence. On these bases, defendants assert Jackson's statements regarding the brown bag were false, were material to finding probable cause, and therefore are sufficient to require a Franks hearing.

The court finds defendants do not carry their burden to show Jackson deliberately or recklessly lied in statements he included in his search warrant affidavit regarding observations of exchange of the brown bag. See Franks, 438 at 171. Miller's interview of Brown is insufficient to

satisfy the standard for a <u>Franks</u> hearing, where Miller lacked personal knowledge of events transpiring at 352 Wesley Drive, and where instead defendants relied on hearsay statements from a third party. (<u>See</u> DE 37-7); <u>see</u> <u>Patterson</u>, 173 F. App'x at 288 (finding evidence insufficient to merit a <u>Franks</u> hearing where "counsel's affidavit was without personal knowledge . . . and bereft of probative evidence other than hearsay statements"). Reliance on Miller's interview is not sufficient in light of Brown's entry of a guilty plea to possession of marijuana. (<u>See</u> DE 40-7). In this respect, the facts of this case further resemble <u>Patterson</u> in that defendants are unable to provide sufficient explanation as to why they could not obtain an affidavit from Brown, especially where Miller was able to locate and interview Brown in person. (<u>See</u> DE 48, 13; 48-4); <u>see</u> <u>Patterson</u>, 173 F. App'x at 288.

In addition, the government has offered a credible explanation for its treatment of the brown bag while in evidence where such explanation is well-supported by records from the North Carolina State Bureau of Investigation ("S.B.I."). (<u>See</u> DE 40-8, 40-9). Defendants' conclusions that the brown bag was mishandled or its existence fabricated, based on their visit to Henderson P.D. headquarters on July 28, 2015, are misplaced where officers informed defendants' representatives during their visit that the bag had been sent to S.B.I. in order to test its contents, and records show that S.B.I. did not terminate its forensics exam of the bag's contents until August 15, 2015. (<u>See</u> DE 40, 40-9).

Finally, the government submits photographs of the brown bag enclosed within a larger plastic bag bearing notes tracking its chain of custody following its recovery from Brown. (DE 40-8). Although S.B.I. describes the evidence as "[p]lastic bag / green plant material," and not as a brown bag, the government explains that officers placed the brown bag inside a plastic evidence

14

bag before sending it to S.B.I. for testing, whereupon S.B.I. technicians disregarded the brown bag itself as irrelevant for testing. (DE 40, 40-9). Accordingly, Jackson's statements in his affidavits regarding the brown bag do not rise to the level of the first requirement for a <u>Franks</u> hearing because Jackson did not include those statements with reckless disregard for the truth.[4]

b. Jackson's Statements Regarding Narcotics Inside Residences

Defendants next argue that Jackson knowingly included a material falsehood in the last sentence of his affidavits. The entire sentence reads: "Based on the activity described and the smell of narcotics in the residence along with the visible drug paraphernalia present." (DE 37-2). Defendants argue also that the statement was material to finding probable cause.

Prior to issue of the M&R, the government submitted an affidavit from Jackson in which Jackson stated that he used language from prior warrants in preparing the instant warrants, that he accidentally failed to remove the last sentence, and that the sentence did not apply to his investigation of defendants. (DE 40-4). In objection to the M&R, defendants offer no new evidence showing that inclusion of the statement was intentional, but rather rely on <u>United States v. McMurtrey</u>, 704 F.3d 502 (7th Cir. 2013),[5] for the proposition that failing to allow a party a hearing in which to challenge discrepancies in a warrant violates that party's Fourth Amendment rights. <u>Id.</u> at 504. The government disputes defendants' interpretation of <u>McMurtrey</u>, and argues that Jackson's last statement was not material to finding probable cause.

---

[4] Where the court finds defendants do not satisfy the first requirement for a <u>Franks</u> hearing, it does not address whether defendants satisfy the second requirement, that Jackson's statements regarding the brown bag were material to finding probable cause. <u>See</u> <u>Franks</u>, 438 U.S. at 155–56.

[5] Defendants' first and only citation to the case refers to "<u>McMurtry</u>, 704 F.3d at 504." In memorandum in opposition to defendants' response, the government presumes defendants refer to the case cited above; the court shares that presumption.

Defendants fail to carry their burden to show that Jackson intentionally included a false statement in the affidavits and that its inclusion was material to finding probable cause. Defendants' reliance on the government's admission that Jackson's last statement was false is misplaced where "[a]llegations of negligence or innocent mistake are insufficient" to require a Franks hearing. See Tate, 524 F.3d at 454. Furthermore, defendants fail to provide supporting documents showing Jackson knowingly intended to include the sentence, and defendants fail to explain the absence of supporting documents. See Clenny, 631 F.3d at 663.

McMurtrey is distinguishable from the facts of this case, where the defendant in that case requested, and the district court granted, a unique "pre-Franks hearing." 704 F.3d at 504–05. There, the Seventh Circuit Court of Appeals, reviewing the "sparse case law" involving such hearings, held that "the option to hold such a limited pre-Franks hearing belongs to the district court, not the defendant. If the defendant's initial Franks motion does not make the required substantial preliminary showing, the court need not hold a pre-Franks hearing to provide the defendant a further opportunity to do so." Id. (quotations omitted). Defendants neither request such a hearing, nor make the required substantial preliminary showing that Jackson intentionally included a false statement in his search warrant affidavits.

Furthermore, defendants fail also to show that Jackson's last statement was material to finding probable cause. The final sentence is a fragment; it is unrelated to the remainder of the paragraph; and its removal would not destroy probable cause where the court has found informants' tips concerning defendants, Jackson's observations of defendants, and his observations of the exchange between defendant Ragland and Brown, are sufficient. Accordingly, defendants have not shown Jackson's statement regarding the sight and smell of narcotics within the residences was

intentionally included in the affidavits, nor that it was material to finding probable cause. For these reasons, and for those stated previously, defendants' motion for a <u>Franks</u> hearing must be denied.

3.      Good Faith Exception

Defendants argue that the good faith exception does not apply where Jackson acted recklessly in including statements relating to the informants' tips, exchange of the brown bag, and narcotics within the residences. The court has addressed above all of the search warrant affidavit statements to which defendants object, and the court finds that the totality of the circumstances supported finding existence of probable cause according to the standard under <u>Gates</u>. <u>See</u> 462 U.S. at 238–39. Therefore, defendants' argument regarding application of the good faith exception is moot.

B.      Motion to Sever Trial

Defendant Ragland moves the court to sever trial of her case from that of defendant Davis on the grounds that the government may enter into evidence incriminating statements defendant Davis made to arresting officers, which allegedly also implicate defendant Ragland. (DE 52-1, 4; 52-2, 5). An arresting officer describes defendant Davis's first statement as follows:

> Davis proceeded to tell me how he had been through two federal debriefs and provided the information he was going to disclose to me. Davis stated that he would provide his source of supply whose nickname was "Lion". Davis stated that Lion dealt with significant pounds of marijuana. I informed Davis that there was a lot of searching that needed to be conducted and I would talk to him when I had the chance.

(DE 52-1, 4). Later, defendant Davis provided a second statement to the officers:

> Mark Davis began to explain to us that he could order up another one to two hundred pounds of marijuana from his source out of Raleigh and also mentioned that he could hand us the biggest dealer on the east coast named "LION". He also advised that he was working with Haitians out of Raleigh and that the safe and drugs belonged to them. He said he got in with them and once you are in there is no getting out. He

17

advised that he did a debriefing with federal agents and he gave them all this information and no one has worked with him. He said he believed that someone ratted on him about what he said during the debriefing because a subject named Tolbridge has already come by and shot up his house. <u>He advised that he knew it was only a matter of time before he would be in prison or dead and that he just wanted his family safe.</u> He advised that he would be willing to work with us but would not work with Criag from the Secret Service or with Lt. Ball of the Henderson Police Department. He advised he could not stand them and that they had done his federal investigation and he was going to prison because of them. We advised him that we were aware of his federal conviction and that he was going to be sentenced soon and also that with our charges his federal pretrial release would be revoked. We advised that this may stop us from being able to work with him further on the matters. At this time the conversation was halted with Davis and both subjects were taken along with all evidence to the police department for processing."

(DE 52-2, 5) (emphasis added).

Defendant Ragland argues these statements would prevent the jury from making a reliable judgment about her guilt or innocence, and would violate her rights under the Confrontation Clause in the event defendant Davis decides not to testify. The government responds that the statements do not implicate defendant Ragland, that a limiting instruction offers a better alternative to severance, and that it will redact from the statements any sentences referring to defendant Ragland.

Rule 14 of the Federal Rules of Criminal Procedure provides in part: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The standard for evaluating a motion to sever is whether there exists "a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." <u>Id.</u> at 534. Determination of the risk of prejudice is left to the sound discretion of the district court. <u>Zafiro v. United States</u>, 506 U.S. 534, 540–41 (1993).

The Fourth Circuit follows the "well-established principle that defendants who are charged in the same criminal conspiracy should be tried together," and "[j]oint trials are favored in those cases in which defendants have been indicted together for the sake of judicial economy." United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995). A defendant seeking relief under Rule 14(a) "has the burden of demonstrating a strong showing of prejudice." United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984). Even then, "[t]he mere showing of prejudice is not enough to require severance." United States v. Hayden, 85 F.3d 153, 160 (4th Cir. 1996).

"[T]ailoring of relief, if any, for any potential prejudice resulting from a joint trial is left to the district court's sound discretion. . . . Often, less drastic measures [than severance], such as limiting instructions, act to cure any risk of prejudice," id., including limiting instructions in cases involving evidence of a co-defendant's incriminating statements. See, e.g., United States v. Nolberto Pena, Nos. 98-4656, 98-4779, 98-4710, 98-4764, 2000 WL 541087, at *9 (4th Cir. Apr. 27, 2000); United States v. Kersey, No. 5:15-CR-184-FL, 2015 WL 9223002, at *3–4 (E.D.N.C. Dec. 17, 2015). Such limiting instructions are effective especially where the evidence at issue is not so complex that the jury would confuse its application as between defendants. See United States v. Johnson, Nos. 98-4329, 98-4337, 98-4348, 1999 WL 543233, at *6–7 (4th Cir. July 27, 1999).

Redaction of a defendant's name and any reference to his or her existence, accompanied by a limiting instruction, provides another form of tailored relief that cures the risk of prejudice and avoids violation of the Confrontation Clause. See Richardson v. Marsh, 481 U.S. 200, 211 (1987); United States v. Min, 704 F.3d 314, 320 (4th Cir. 2013). "This is true even when the [co-defendant's statement] inferentially incriminates the [other] [co-]defendant because other evidence admitted subsequently at trial clearly links the defendant to the statement in an inculpatory manner."

19

<u>Min</u>, 704 F.3d at 320 (internal quotations omitted); <u>see also</u> <u>United States v. Lighty</u>, 616 F.3d 321, 377 (4th Cir. 2010) ("[W]here a non-testifying codefendant's redacted out-of-court statement identifies the defendant by implication when linked with evidence at trial, such statement is admissible so long as a proper limiting jury instruction is given."). For example, in <u>Lighty</u>, the Fourth Circuit Court of Appeals found no violation of Confrontation Clause rights where the district court issued jury instructions "admonishing jurors not to consider [one co-defendant]'s out-of-court statements in the case against [another co-defendant]." <u>Id.</u>

Only one sentence in defendant Davis's statements to arresting officers refers to his family: "[Defendant Davis] advised that he knew it was only a matter of time before he would be in prison or dead and that he just wanted his family safe." (DE 52-2, 5). Defendant Ragland appears to argue that defendant Davis's reference in this sentence to "his family" implicates her in his larger wrongdoing because she and defendant Davis have been romantically involved for more than fifteen years and share a minor child. The remainder of defendant Davis's statements incriminate only him and third parties not charged in this case. Therefore, redaction of the entire sentence referring to defendant Davis's "family"—to which the government already has agreed—avoids violation of defendant Ragland's rights under the Confrontation Clause. <u>See</u> <u>Richardson</u>, 481 U.S. at 211 ("[T]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.").

With regard to the possibility of inferential incrimination of defendant Ragland based upon other, unredacted portions of defendant Davis's statements, cautionary instructions limiting the jury to considering the statements only as they pertain to defendant Davis cures any risk of prejudice to

defendant Ragland. <u>See</u> <u>Nolberto Pena</u>, 2000 WL 541087, at *9; <u>Kersey</u>, 2015 WL 9223002, at *3–4. Potential inferential incrimination of defendant Ragland based upon other evidence admitted at trial subsequent to admission of defendant Davis's redacted statements does not provide sufficient cause for severance. <u>See</u> <u>Min</u>, 704 F.3d at 320 (denying severance where one co-defendant's redacted statement could inferentially incriminate another co-defendant only through other evidence admitted subsequently at trial); <u>Lighty</u>, 616 F.3d at 377 (same).

Defendant Ragland fails to make a sufficient showing that prejudice will result from a joint trial in this case, where redaction of the sentence in which defendant Davis alludes to defendant Ragland as "family" avoids violation of her rights under the Confrontation Clause, and where a limiting instruction pertaining to the unredacted remainder of defendant Davis's statements cures any risk of prejudice to her. <u>See</u> <u>Zafiro</u>, 506 U.S. at 534 ("Severance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence."). Accordingly, defendant Ragland's motion to sever trial must be denied.

## CONCLUSION

With respect to defendants' joint motion to suppress evidence and receive a <u>Franks</u> hearing (DE 36), based on the foregoing reasons, <u>de</u> <u>novo</u> review of the portions of the M&R to which specific objections were raised, and considered review of those portions to which no such objections were made, the court ADOPTS the recommendation of the magistrate judge as its own: the motion is GRANTED IN PART and DENIED IN PART. In particular, the motion is DENIED with respect to a <u>Franks</u> hearing, as well as to suppression of evidence seized from searches of 352 Wesley Drive and 744 Parham Road; the motion is GRANTED with respect to suppression of evidence seized

from warrantless search of 490 Wesley Drive.  With respect to defendant Ragland's motion to sever

trial (DE 51), based on the reasons set forth above, the motion is DENIED.

SO ORDERED, this the 8th day of March, 2016.


LOUISE W. FLANAGAN
United States District Judge